Justice GINSBURG delivered the opinion of the Court.
*1846 Title VII of the Civil Rights Act of 1964 proscribes discrimination in employment on the basis of race, color, religion, sex, or national origin. 78 Stat. 255, 42 U.S.C. § 2000e-2(a)(1). The Act also prohibits retaliation against persons who assert rights under the statute. § 2000e-3(a). As a precondition to the commencement of a Title VII action in court, a complainant must first file a charge with the Equal Employment Opportunity Commission (EEOC or Commission). § 2000e-5(e)(1), (f)(1). The question this case presents: Is Title VII's charge-filing precondition to suit a "jurisdictional" requirement that can be raised at any stage of a proceeding; or is it a procedural prescription mandatory if timely raised, but subject to forfeiture if tardily asserted? We hold that Title VII's charge-filing instruction is not jurisdictional, a term generally reserved to describe the classes of cases a court may entertain (subject-matter jurisdiction) or the persons over whom a court may exercise adjudicatory authority (personal jurisdiction). Kontrick v. Ryan , 540 U.S. 443, 455, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004). Prerequisites to suit like Title VII's charge-filing instruction are not of that character; they are properly ranked among the array of claim-processing rules that must be timely raised to come into play.
I
Title VII directs that a "charge ... shall be filed" with the EEOC "by or on behalf of a person claiming to be aggrieved" within 180 days "after the alleged unlawful employment practice occur[s]." 42 U.S.C. § 2000e-5(b), (e)(1). For complaints concerning a practice occurring in a State or political subdivision that has a fair employment agency of its own empowered "to grant or seek relief," Title VII instructs the complainant to file her charge first with the state or local agency. § 2000e-5(c). The complainant then has 300 days following the challenged practice, or 30 days after receiving notice that state or local proceedings have ended, "whichever is earlier," to file a charge with the EEOC. § 2000e-5(e)(1). If the state or local agency has a "worksharing" agreement with the EEOC, a complainant ordinarily need not file separately with federal and state agencies. She may file her charge with one agency, and that agency will then relay the charge to the other. See 29 CFR § 1601.13 (2018) ; Brief for United States as Amicus Curiae 3.
When the EEOC receives a charge, in contrast to agencies like the National Labor Relations Board, 29 U.S.C. § 160, and the Merit Systems Protection Board, 5 U.S.C. § 1204, it does not "adjudicate [the] clai[m]," Alexander v. Gardner-Denver Co. , 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). Instead, Title VII calls for the following course. Upon *1847 receiving a charge, the EEOC notifies the employer and investigates the allegations. 42 U.S.C. § 2000e-5(b). If the Commission finds "reasonable cause" to believe the charge is true, the Act instructs the Commission to "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." Ibid. When informal methods do not resolve the charge, the EEOC has first option to "bring a civil action" against the employer in court. § 2000e-5(f)(1). Where the discrimination charge is lodged against state or local government employers, the Attorney General is the federal authority empowered to commence suit. Ibid.[1]
In the event that the EEOC determines there is "n[o] reasonable cause to believe that the charge is true," the Commission is to dismiss the charge and notify the complainant of his or her right to sue in court. 42 U.S.C. § 2000e-5(b), f(1); 29 CFR § 1601.28. Whether or not the EEOC acts on the charge, a complainant is entitled to a "right-to-sue" notice 180 days after the charge is filed. § 2000e-5(f)(1) ; 29 CFR § 1601.28. And within 90 days following such notice, the complainant may commence a civil action against the allegedly offending employer. § 2000e-5(f)(1).
II
Respondent Lois M. Davis worked in information technology for petitioner Fort Bend County. In 2010, she informed Fort Bend's human resources department that the director of information technology, Charles Cook, was sexually harassing her. Following an investigation by Fort Bend, Cook resigned. Davis' supervisor at Fort Bend, Kenneth Ford, was well acquainted with Cook. After Cook resigned, Davis alleges, Ford began retaliating against her for reporting Cook's sexual harassment. Ford did so, according to Davis, by, inter alia , curtailing her work responsibilities.
Seeking redress for the asserted harassment and retaliation, Davis submitted an "intake questionnaire" in February 2011, followed by a charge in March 2011.[2] While her EEOC charge was pending, Davis was told to report to work on an upcoming Sunday. Davis informed her supervisor Ford that she had a commitment at church that Sunday, and she offered to arrange for another employee to replace her at work. Ford responded that if Davis did not show up for the Sunday work, she would be subject to termination. Davis went to church, not work, that Sunday. Fort Bend thereupon fired her.
Attempting to supplement the allegations in her charge, Davis handwrote "religion" on the "Employment Harms or Actions" part of her intake questionnaire, and she checked boxes for "discharge" and "reasonable accommodation" on that form. She made no change, however, in the formal charge document. A few months later, the Department of Justice notified Davis of her right to sue.
In January 2012, Davis commenced a civil action in the United States District Court for the Southern District of Texas, alleging discrimination on account of religion *1848 and retaliation for reporting sexual harassment.[3] The District Court granted Fort Bend's motion for summary judgment. Davis v. Fort Bend County , 2013 WL 5157191 (SD Tex., Sept. 11, 2013). On appeal, the Court of Appeals for the Fifth Circuit affirmed as to Davis' retaliation claim, but reversed as to her religion-based discrimination claim. Davis v. Fort Bend County , 765 F. 3d 480 (2014). Fort Bend filed a petition for certiorari, which this Court denied. 576 U.S. ----, 135 S.Ct. 2804, 192 L.Ed.2d 847 (2015).
When the case returned to the District Court on Davis' claim of discrimination on account of religion, Fort Bend moved to dismiss the complaint. Years into the litigation, Fort Bend asserted for the first time that the District Court lacked jurisdiction to adjudicate Davis' religion-based discrimination claim because she had not stated such a claim in her EEOC charge. Granting the motion, the District Court held that Davis had not satisfied the charge-filing requirement with respect to her claim of religion-based discrimination, and that the requirement qualified as "jurisdictional," which made it nonforfeitable. 2016 WL 4479527 (SD Tex., Aug. 24, 2016).
The Fifth Circuit reversed. 893 F. 3d 300 (2018). Title VII's charge-filing requirement, the Court of Appeals held, is not jurisdictional; instead, the requirement is a prudential prerequisite to suit, forfeited in Davis' case because Fort Bend did not raise it until after "an entire round of appeals all the way to the Supreme Court." Id. , at 307-308.
We granted Fort Bend's petition for certiorari, 586 U.S. ----, 139 S.Ct. 915, 202 L.Ed.2d 641 (2019), to resolve a conflict among the Courts of Appeals over whether Title VII's charge-filing requirement is jurisdictional. Compare, e.g. , 893 F. 3d at 306 (case below) (charge-filing requirement is nonjurisdictional), with, e.g. , Jones v. Calvert Group, Ltd. , 551 F. 3d 297, 300 (CA4 2009) (federal courts lack subject-matter jurisdiction when the charge-filing requirement is not satisfied).
III
"Jurisdiction," the Court has observed, "is a word of many, too many, meanings." Kontrick , 540 U.S. at 454, 124 S.Ct. 906 (quoting Steel Co. v. Citizens for Better Environment , 523 U.S. 83, 90, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ).[4] In recent years, the Court has undertaken "[t]o ward off profligate use of the term." Sebelius v. Auburn Regional Medical Center , 568 U.S. 145, 153, 133 S.Ct. 817, 184 L.Ed.2d 627 (2013). As earlier noted, see supra , at ----, the word "jurisdictional" is generally reserved for prescriptions delineating the classes of cases a court may entertain (subject-matter jurisdiction) and the persons over whom the court may exercise adjudicatory authority (personal jurisdiction). Kontrick , 540 U.S. at 455, 124 S.Ct. 906.
*1849 Congress may make other prescriptions jurisdictional by incorporating them into a jurisdictional provision, as Congress has done with the amount-in-controversy requirement for federal-court diversity jurisdiction. See 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000 ... and is between (1) citizens of different States ...."). In addition, the Court has stated it would treat a requirement as "jurisdictional" when "a long line of [Supreme] Cour[t] decisions left undisturbed by Congress" attached a jurisdictional label to the prescription. Union Pacific R. Co. v. Locomotive Engineers , 558 U.S. 67, 82, 130 S.Ct. 584, 175 L.Ed.2d 428 (2009) (citing Bowles v. Russell , 551 U.S. 205, 209-211, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007) ). See also John R. Sand & Gravel Co. v. United States , 552 U.S. 130, 132, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008).
Characterizing a rule as a limit on subject-matter jurisdiction "renders it unique in our adversarial system." Auburn , 568 U.S. at 153, 133 S.Ct. 817. Unlike most arguments, challenges to subject-matter jurisdiction may be raised by the defendant "at any point in the litigation," and courts must consider them sua sponte . Gonzalez v. Thaler , 565 U.S. 134, 141, 132 S.Ct. 641, 181 L.Ed.2d 619 (2012). "[H]arsh consequences" attend the jurisdictional brand. United States v. Kwai Fun Wong , 575 U.S. 402, ----, 135 S.Ct. 1625, 1632, 191 L.Ed.2d 533 (2015)."Tardy jurisdictional objections" occasion wasted court resources and "disturbingly disarm litigants." Auburn , 568 U.S. at 153, 133 S.Ct. 817.
The Court has therefore stressed the distinction between jurisdictional prescriptions and nonjurisdictional claim-processing rules, which "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." Henderson v. Shinseki , 562 U.S. 428, 435, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011). A claim-processing rule may be "mandatory" in the sense that a court must enforce the rule if a party "properly raise[s]" it. Eberhart v. United States , 546 U.S. 12, 19, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (per curiam ). But an objection based on a mandatory claim-processing rule may be forfeited "if the party asserting the rule waits too long to raise the point." Id. , at 15, 126 S.Ct. 403 (quoting Kontrick , 540 U.S. at 456, 124 S.Ct. 906 ).[5]
The Court has characterized as nonjurisdictional an array of mandatory claim-processing rules and other preconditions to relief. These include: the Copyright Act's requirement that parties register their copyrights (or receive a denial of registration from the Copyright Register) before commencing an infringement action, Reed Elsevier, Inc. v. Muchnick , 559 U.S. 154, 157, 163-164, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010) ; the Railway Labor Act's direction that, before arbitrating, parties to certain railroad labor disputes "attempt settlement 'in conference,' " Union Pacific , 558 U.S. at 82, 130 S.Ct. 584 (quoting 45 U.S.C. § 152 ); the Clean Air Act's instruction that, to maintain an objection in court on certain issues, one must first raise the objection "with reasonable specificity" during agency rulemaking, *1850 EPA v. EME Homer City Generation, L. P. , 572 U.S. 489, 511-512, 134 S.Ct. 1584, 188 L.Ed.2d 775 (2014) (quoting 42 U.S.C. § 7607(d)(7)(B) ); the Antiterrorism and Effective Death Penalty Act's requirement that a certificate of appealability "indicate [the] specific issue" warranting issuance of the certificate, Gonzalez , 565 U.S. at 137, 132 S.Ct. 641 (quoting 28 U.S.C. § 2253(c)(3) ); Title VII's limitation of covered "employer[s]" to those with 15 or more employees, Arbaugh v. Y & H Corp. , 546 U.S. 500, 503-504, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (quoting 42 U.S.C. § 2000e(b) ); Title VII's time limit for filing a charge with the EEOC, Zipes v. Trans World Airlines, Inc. , 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) ; and several other time prescriptions for procedural steps in judicial or agency forums. See, e.g. , Hamer v. Neighborhood Housing Servs. of Chicago , 583 U.S. ----, ----, 138 S.Ct. 13, 17, 199 L.Ed.2d 249 (2017) ; Musacchio v. United States , 577 U.S. ----, ----, 136 S.Ct. 709, 716-717, 193 L.Ed.2d 639 (2016) ; Kwai Fun Wong , 575 U.S., at ----, 135 S.Ct., at 1633-1634 ; Auburn , 568 U.S. at 149, 133 S.Ct. 817 ; Henderson , 562 U.S. at 431, 131 S.Ct. 1197 ; Eberhart , 546 U.S. at 13, 126 S.Ct. 403 ; Scarborough v. Principi , 541 U.S. 401, 414, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004) ; Kontrick , 540 U.S. at 447, 124 S.Ct. 906.[6]
While not demanding that Congress "incant magic words" to render a prescription jurisdictional, Auburn , 568 U.S. at 153, 133 S.Ct. 817, the Court has clarified that it would "leave the ball in Congress' court": "If the Legislature clearly states that a [prescription] count[s] as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue[;] [b]ut when Congress does not rank a [prescription] as jurisdictional, courts should treat the restriction as nonjurisdictional in character." Arbaugh , 546 U.S. at 515-516, 126 S.Ct. 1235 (footnote and citation omitted).
IV
Title VII's charge-filing requirement is not of jurisdictional cast. Federal courts exercise jurisdiction over Title VII actions pursuant to 28 U.S.C. § 1331's grant of general federal-question jurisdiction, and Title VII's own jurisdictional provision, 42 U.S.C. § 2000e-5(f)(3) (giving federal courts "jurisdiction [over] actions brought under this subchapter").[7] Separate provisions of Title VII, § 2000e-5(e)(1) and (f)(1), contain the Act's charge-filing requirement. Those provisions "d[o] not speak to a court's authority," EME Homer , 572 U.S. at 512, 134 S.Ct. 1584, or *1851 "refer in any way to the jurisdiction of the district courts," Arbaugh , 546 U.S. at 515, 126 S.Ct. 1235 (quoting Zipes , 455 U.S. at 394, 102 S.Ct. 1127 ).
Instead, Title VII's charge-filing provisions "speak to ... a party's procedural obligations." EME Homer , 572 U.S. at 512, 134 S.Ct. 1584. They require complainants to submit information to the EEOC and to wait a specified period before commencing a civil action. Like kindred provisions directing parties to raise objections in agency rulemaking, id. , at 511-512, 134 S.Ct. 1584 ; follow procedures governing copyright registration, Reed Elsevier , 559 U.S. at 157, 130 S.Ct. 1237 ; or attempt settlement, Union Pacific , 558 U.S. at 82, 130 S.Ct. 584, Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts.[8]
Resisting this conclusion, Fort Bend points to statutory schemes that channel certain claims to administrative agency adjudication first, followed by judicial review in a federal court. In Elgin v. Department of Treasury , 567 U.S. 1, 132 S.Ct. 2126, 183 L.Ed.2d 1 (2012), for example, the Court held that claims earmarked for initial adjudication by the Merit Systems Protection Board, then review in the Court of Appeals for the Federal Circuit, may not proceed instead in federal district court. Id. , at 5-6, 8, 132 S.Ct. 2126. See also Thunder Basin Coal Co. v. Reich , 510 U.S. 200, 202-204, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994) (no district court jurisdiction over claims assigned in the first instance to a mine safety commission, whose decisions are reviewable in a court of appeals). Nowhere do these cases, or others cited by Fort Bend, address the issue here presented: whether a precondition to suit is a mandatory claim-processing rule subject to forfeiture, or a jurisdictional prescription.
Fort Bend further maintains that "[t]he congressional purposes embodied in the Title VII scheme," notably, encouraging conciliation and affording the EEOC first option to bring suit, support jurisdictional characterization of the charge-filing requirement. Brief for Petitioner 27. But a prescription does not become jurisdictional whenever it "promotes important congressional objectives." Reed Elsevier , 559 U.S. at 169, n. 9, 130 S.Ct. 1237. And recognizing that the charge-filing requirement is nonjurisdictional gives plaintiffs scant incentive to skirt the instruction. Defendants, after all, have good reason promptly to raise an objection that may rid them of the lawsuit filed against them. A Title VII complainant would be foolhardy consciously *1852 to take the risk that the employer would forgo a potentially dispositive defense.
In sum, a rule may be mandatory without being jurisdictional, and Title VII's charge-filing requirement fits that bill.
* * *
For the reasons stated, the judgment of the Court of Appeals for the Fifth Circuit is
Affirmed.

A different provision of Title VII, 42 U.S.C. § 2000e-16, prohibits employment discrimination by the Federal Government and sets out procedures applicable to claims by federal employees.

Davis submitted these documents to the Texas Workforce Commission. Complaints lodged with that commission are relayed to the EEOC, under a "worksharing" agreement between the two agencies. See How To Submit an Employment Discrimination Complaint, Texas Workforce Commission, https://twc.texas.gov/jobseekers/how-submit-employment-discrimination-complaint (as last visited May 30, 2019).

Davis also alleged intentional infliction of emotional distress, but she did not appeal the District Court's grant of summary judgment to Fort Bend on that claim.

"Courts, including this Court, ... have more than occasionally [mis]used the term 'jurisdictional' " to refer to nonjurisdictional prescriptions. Scarborough v. Principi , 541 U.S. 401, 413, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004) (quoting Kontrick v. Ryan , 540 U.S. 443, 454, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) (alterations in original)). Passing references to Title VII's charge-filing requirement as "jurisdictional" in prior Court opinions, see, e.g. , McDonnell Douglas Corp. v. Green , 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), display the terminology employed when the Court's use of "jurisdictional" was "less than meticulous," Kontrick , 540 U.S. at 454, 124 S.Ct. 906.

The Court has "reserved whether mandatory claim-processing rules may [ever] be subject to equitable exceptions." Hamer v. Neighborhood Housing Servs. of Chicago , 583 U.S. ----, ----, n. 3, 138 S.Ct. 13, 18, n. 3, 199 L.Ed.2d 249 (2017).

"If a time prescription governing the transfer of adjudicatory authority from one Article III court to another appears in a statute, the limitation [will rank as] jurisdictional; otherwise, the time specification fits within the claim-processing category." Hamer , 583 U.S., at ----, 138 S.Ct., at 20 (citation omitted).

When Title VII was passed in 1964, 28 U.S.C. § 1331's grant of general federal-question jurisdiction included an amount-in-controversy requirement. See § 1331(a) (1964 ed.). To ensure that this "limitation would not impede an employment-discrimination complainant's access to a federal forum," Arbaugh v. Y & H Corp. , 546 U.S. 500, 505, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006), Congress enacted Title VII's jurisdiction-conferring provision, 42 U.S.C. § 2000e-5(f)(3). See Arbaugh , 546 U.S. at 505-506, 126 S.Ct. 1235. In 1980, Congress eliminated § 1331's amount-in-controversy requirement. See Federal Question Jurisdictional Amendments Act of 1980, § 2, 94 Stat. 2369. Since then, "Title VII's own jurisdictional provision, 42 U.S.C. § 2000e-5(f)(3), has served simply to underscore Congress' intention to provide a federal forum for the adjudication of Title VII claims." Arbaugh , 546 U.S. at 506, 126 S.Ct. 1235. Title VII also contains a separate jurisdictional provision, § 2000e -6(b), giving federal courts jurisdiction over actions by the Federal Government to enjoin "pattern or practice" discrimination.

Fort Bend argues that Title VII's charge-filing requirement is jurisdictional because it is "textually linked" to Title VII's jurisdictional provision. Brief for Petitioner 50. Title VII states in 42 U.S.C. § 2000e-5(f)(1) that "a civil action may be brought" after the charge-filing procedures are followed. Section 2000e-5(f)(3) gives federal courts jurisdiction over "actions brought under this subchapter," a subchapter that includes § 2000e-5(f)(1). Therefore, Fort Bend insists, federal jurisdiction lies under § 2000e-5(f)(3) only when a proper EEOC charge is filed. But as just observed, see supra , at ----, the charge-filing requirement is stated in provisions discrete from Title VII's conferral of jurisdiction on federal courts. See Sebelius v. Auburn Regional Medical Center , 568 U.S. 145, 155, 133 S.Ct. 817, 184 L.Ed.2d 627 (2013) (a requirement "does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions"); Gonzalez v. Thaler , 565 U.S. 134, 145, 132 S.Ct. 641, 181 L.Ed.2d 619 (2012) (a nonjurisdictional provision does not metamorphose into a jurisdictional limitation by cross-referencing a jurisdictional provision).